IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA BROWN CONLEY, TERRY GORDON, MARY REDMOND, and SABRINA PIPKINS, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Judge Robert M. Dow, Jr. |
| v. | ) Case No. 09-CV-5996 |
| NESTLÉ USA, INC. | )<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On September 25, 2009, Patricia Brown Conley, Mary Redmond, Terry Gordon, and Sabrina Pipkins (collectively "Plaintiffs") filed a one-count complaint alleging that Defendant Nestlé USA, Inc. ("Nestlé" or "Defendant") had discriminated against them on the basis of race in violation of 42 U.S.C. § 1981 [1]. On May 24, 2010, the Supreme Court decided *Lewis v. City of Chicago*, 130 S. Ct. 2191 (2010), which held that plaintiffs could bring claims premised on the later implementation of formerly-adopted policies under the "disparate impact" provision of Title VII, 42 U.S.C. § 2000e-2; such claims were previously barred in this circuit. On June 4, 2010, plaintiffs Conley, Redmond, and Gordon filed charges with the Equal Employment Opportunity Commission ("EEOC"), a statutory prerequisite to a disparate impact claim, and filed a motion in this Court to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) to add such a claim [20].

After the motion to amend was fully briefed but before the Court had ruled, plaintiffs Conley, Redmond and Gordon filed a second lawsuit (1:10-cv-05731) against Nestlé, which

1

asserted a single Title VII claim which was nearly identical to the disparate impact claim they proposed to add in this case. On October 4, 2010 the second case was reassigned to this Court pursuant to Local Rule 40.4, because the facts underlying both cases were identical. (See doc. no. 7 in 10-cv-05731). On October 13, 2010, the Court struck the motion to amend the complaint in this case without prejudice; the parties and the Court having agreed that the two cases would be consolidated and the briefing on Plaintiffs' motion to amend would be treated as the briefing on the motion to dismiss that Defendant would file targeted at the complaint in the 10-cv-05731 case. (See [51]).

On October 27, Defendant filed its motion to dismiss in the 10-cv-05731 case (see doc. no. 9 in 10-cv-05731), which contained an extensive discussion of new authority. Accordingly, the Court allowed Plaintiffs an additional response [see 57]. On November 1, the Court consolidated the cases for all purposes. On December 1, after reviewing Plaintiff's additional response, Defendant filed what it styled a "Motion for Leave Either to File a Short Reply Brief in Support of its Motion to Dismiss Or Present Oral Argument to Correct Misstatements of Fact Contained in Plaintiffs' Opposition" [59]. On December 7, the parties appeared before this Court on Defendant's motion, and the Court heard argument pertaining to the pending motions.

With that background out of the way, before the Court is Defendant's motion to dismiss Plaintiff's Title VII claim, which is found in the complaint filed in the 10-cv-05731 case. Defendant essentially argues that Plaintiffs' disparate impact claim is time barred because each plaintiff has admitted in depositions conducted in this case that Defendant's allegedly discriminatory policy did not affect them within the 300-day charging period. In the alternative, Defendant argues that Plaintiff's complaint is deficient for failure to allege sufficient facts to

demonstrate that the limitations period applicable to their claim has not expired. For the reasons stated below, Defendant's motion is denied.

**I.     Background**[1]

Plaintiffs are former African-American "machine operators" at Nestlé's Franklin Park, Illinois plant. As machine operators, Plaintiffs' duties included operating and cleaning the machines at the plant and performing adjustments and certain maintenance. As a group, the machine operators were predominantly African-American.

In early 2005, Defendant told Plaintiffs that their positions would soon be replaced by the newly created (and more highly paid) position of "mechanic operators." Plaintiffs were told that they must take a test called the "NOCTI test" to be eligible for the new positions. If a machine operator received a certain score, he or she would qualify to participate in a newly created apprenticeship program which would lead to a mechanic operator position. Plaintiffs presumably did not receive qualifying scores. Instead, Plaintiffs allege that as a result of the testing, Plaintiffs and other incumbents were replaced by individuals who had not previously worked at the plant and who were not African-American. Plaintiffs allege that there was little difference between the duties of a "machine operator" and a "mechanic operator" (in fact, the only difference was that "mechanic operators" had fewer duties) and that the testing had no relationship to the job requirements of either position.

Incumbent machine operators were then told that they could continue to perform their current jobs for the time being, but that they were required to attend and pass certain weekend

---

[1] The following facts are taken from Plaintiffs' complaint filed at doc. no. 1 in the 10-cv-05731 case. That complaint may also be found in this docket at [49], ex. 1. For present purposes, the Court accepts all well-pleaded allegations in the complaint as true, as precedent instructs. See *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). At this juncture, the Court takes no position on whether any of the allegations are, in fact, well-founded.

apprentice classes in order to continue in their positions or be promoted. Plaintiffs allege that Defendant created the classes as a "barrier on a racially disparate basis to their entry into the position of mechanic operators for which they were highly qualified." ¶ 30. The course work, which included work from a college-level mathematics textbook, was "not related in any way to the job that incumbent plaintiff machine operators were performing." ¶ 31.

While Plaintiffs continued in the weekend classes, they were asked to train the new mechanic operators and they were also asked to return to the line to operate the machinery during "production squeezes" on at least two occasions. Plaintiffs allege that they received only $19 per hour throughout this period, while the new mechanic operators with whom Plaintiffs trained and occasionally worked received $26 per hour.

After Plaintiffs failed the classes, Plaintiffs were removed from the line and have struggled to receive regular hours since.

Plaintiffs' Title VII claim alleges that requiring Plaintiffs and the other machine operators to take exams and coursework unrelated to the position of mechanic operators had and continue to have "a disparate impact upon African American candidates." ¶ 54.

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 912 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual

allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concertra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).[2]

## III. Analysis

Defendant directs two arguments at Plaintiffs' disparate impact claim, which the Court will consider in turn. First, Defendant argues that the recent change to the law of this circuit brought about by *Lewis* does not save the timeliness of Plaintiffs' Title VII claims. In order to address Defendant's argument, a brief discussion of the Supreme Court's opinion in *Lewis* is required.

In *Lewis*, the Supreme Court held that plaintiffs could bring claims premised on the later implementation of formerly-adopted policies under the "disparate impact" provision of Title VII. 130 S. Ct. at 2197-98. *Lewis* involved a certain written examination that the City of Chicago administered in July of 1995 to applicants seeking to serve in the Chicago Fire Department. 130 S. Ct. at 2195. Based on their scores on the exam, the City sorted the applicants into three

---

[2] The Court is cognizant of the fact that this issue of the timeliness of Plaintiff's disparate impact claim was initially presented to the Court during the briefing on Plaintiff's Rule 15 motion for leave to file their first amended complaint [20]. This procedural wrinkle is of no import: Whether the Court took up the issue under Rule 15(a) or Rule 12(b)(6), the applicable standard is identical. See, *e.g. Chen v. Mayflower Transit, Inc.*, 159 F. Supp. 2d 1103, 1107 (N.D. Ill. 2001) ("In reviewing [a proposed amendment] for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6)motion."); *Fogarty v. City of Chicago*, 2002 WL 31409582, *1 (N.D. Ill. Oct. 23, 2002) (same).

categories: "well qualified," "qualified," and "not qualified." *Id*. The names of the "well qualified" applicants were placed on a list of those eligible for hire. Those whose scores were sufficient to earn a "qualified" label were notified that they had passed the test but that based on the City's projected hiring needs and the number of "well-qualified" applicants, it was not likely they would be called for further processing. *Id*. at 2195-96. However, the "qualified" individuals were told that their names would be kept on an "eligibility list" maintained by the City for as long as that list was used, and if need arose, would be contacted in the future. *Id*. at 2196.[3] In ten rounds of hiring over the next six years, the City randomly hired applicants from the "well-qualified" list. In the eleventh round of hiring, the City had exhausted its pool of "well-qualified" applicants, so it filled the remaining slots with "qualified" candidates instead. *Id*.

Beginning on March 31, 1997, six African-American applicants who had scored in the "qualified range" but had not been selected for hire filed charges with the EEOC. After receiving right-to-sue letters, the plaintiffs filed their complaint in September 1998, alleging that the City's practice of selecting for advancement only applicants who achieved a certain score caused a disparate impact on African-Americans in violation of Title VII. *Id*. In the district court, the City stipulated that the score cutoff had a "severe disparate impact against African Americans," but then moved for summary judgment on the ground that petitioners had failed to file EEOC charges within 300 days after their claims accrued. The district court denied the City's motion, but the Seventh Circuit reversed, holding that the suit was untimely because the earliest EEOC charge was filed more than 300 days after the *only* discriminatory act: the July 1995 sorting of the scores into the "well-qualified," "qualified," and "not-qualified" categories.

---

[3] The applicants who failed the test were deemed "not qualified" and were informed that they would no longer be considered for a firefighter position. *Id*. at 2195.

6

See 528 F.3d 488, 491 (7th Cir. 2008). The hiring decisions down the line were immaterial, the court reasoned, because "[t]he hiring only of applicants classified 'well qualified' was the automatic consequence of the test scores rather than the product of a fresh act of discrimination." *Id.* at 491.

The Supreme Court reversed. The Court agreed with the Seventh Circuit that the City's "decision to adopt the cutoff score (and to create a list of the applicants above it) gave rise to a freestanding disparate-impact claim" that, because no timely charge was filed attacking it, was time barred. *Id*. at 2199. However, the Court clarified that each time the City implemented its earlier decision and excluded the applicants with lower scores on the exam, a "new violation occurred." *Id*. (citing 42 U.S.C. § 2000e-2(k)). *Lewis*, therefore, stands for the proposition that later implementation of a policy that causes as disparate impact can qualify as a new, actionable "employment practice." See *Id*. at 2198-99. Because at least one of the City's rounds of hiring that had excluded the plaintiffs took place within the 300-day limitations period, the plaintiffs' claims were not completely time-barred.

However, nothing that the Supreme Court said in *Lewis* removed the requirement that a Title VII plaintiff must show a "present violation" within the 300-day limitations period. To the contrary, the requirement was satisfied in *Lewis* because the plaintiffs in *Lewis* remained on the City's "eligibility list" (and therefore in essence remained under consideration for the positions). See 130 S. Ct. at 2199 (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977)). Therefore, each time that the City made a hiring decision based on the results of its concededly discriminatory examination, the plaintiffs themselves actively suffered from the effects of that decision.

7

The named plaintiffs already have been deposed in this case. According to Defendant, Plaintiffs' own deposition testimony shows that, unlike the plaintiffs in *Lewis*, Plaintiffs were not "still awaiting an opportunity to become Mechanic Operators." (Def. Mem. [23] at 9-10 n.4 (citing transcripts of Plaintiffs' depositions)). Defendant asserts that Plaintiffs have admitted in their depositions that they have "not made any further efforts to become Mechanic Operators" since they left the apprenticeship program in June of 2006. *Id.* Accordingly, says Defendant, June 2006 was the last time that Defendant's practices affected Plaintiffs, and Plaintiffs cannot show a "present violation" during the charging period.

Depending on the content of Plaintiffs' admissions (among other facts to be presented to the Court), Defendant's timeliness argument ultimately may prove successful. However, Defendant's motion to dismiss must be denied because the complaint *on its face* does not demonstrate that the disparate impact claim is time-barred. On a motion to dismiss, the Court is precluded from considering the cited deposition transcripts, or in fact any evidence outside Plaintiffs' complaint that is not referred to in the complaint and central to the claim.

"The time limits imposed on potential litigants by Title VII * * * operate akin to statutes of limitation, rather than as a jurisdictional requirement." *Delgado v. Certified Grocers Midwest, Inc.*, 2006 WL 2873215, *2 (N.D. Ill. Oct. 5, 2006) (citing *Rennie v. Garrett,* 896 F.2d 1057, 1062 (7th Cir. 1990); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)). It is a "basic rule" that the "statute of limitations is an affirmative defense and need not be addressed in the complaint." *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n.*, 377 F.3d 682, 688 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c)); see also *Adonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008); *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). "A complaint states a claim on which relief may be granted whether or not some

defense is potentially available. * * * Complaints need not anticipate defenses; the resolution of the statute of limitations comes after the complaint stage." *Id.* (quoting *United States v. N. Trust Co.,* 372 F.3d 886 (7th Cir.2004)). However, "a statute of limitations defense [raised in a motion to dismiss] is appropriate where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Adonissamy*, 547 F.3d at 847 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

Here, Plaintiffs complaint is essentially silent as to when the balance of Defendant's complained-of conduct occurred. Plaintiffs allege only that "[i]n or around early 2005, the employer informed plaintiffs and others in their positions that they would soon be replaced by mechanic operators." (Cmplt. at ¶ 22). The complaint does not identify when Plaintiffs were dismissed from the apprenticeship program and is silent as to whether Plaintiffs continued to seek employment as mechanic operators after their dismissal. On its face, the complaint does not affirmatively demonstrate that Plaintiffs were not actively excluded from the mechanic operator position at some point during the 300-day period preceding the filing of their EEOC charges. Accordingly, dismissal is inappropriate. *Barry Aviation Inc.*, 377 F.3d at 688.

Furthermore, if the complaint and associated materials themselves do not demonstrate that the complaint is time-barred (as is the case here), it would be improper to consider deposition transcripts to prove such a point at this stage of the case. Generally, on a Rule 12(b)(6) motion, a court may consider only the plaintiff's complaint and the documents attached thereto. *Rosenblum v, Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). An exception to this rule exists for a "limited class" of documents that are "referred to in the plaintiff's complaint and are central to his claim." *Rosenblum,* 299 F.3d at 661. The deposition transcripts clearly do

9

not meet this test. Defendant has identified no authority to support its assertion that the Court may consider the transcripts on a motion to dismiss.[4]

When additional evidence is attached to a motion to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 * * * or exclude the documents attached to the motion to dismiss and continue under Rule 12." *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). The Court, in its discretion (see, *e.g. Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)), chooses the latter course. During December 7, 2010 status hearing on the outstanding motions, the Court explained to counsel for Defendant that it could not consider the deposition transcripts on a motion to dismiss and asked counsel whether Defendant would consider withdrawing its motion and instead filing a motion for summary judgment pursuant to Rule 56. Counsel declined, citing the increased cost and effort associated with taking discovery for and preparing such a motion. The Court is mindful of counsel's concerns; however, counsel has not offered any explanation or justification for how the Court could consider evidence extrinsic to the complaint on a motion to dismiss (or motion to amend) the complaint. As counsel for Defendant appeared reluctant to proceed immediately on a motion for summary judgment, the Court will not force Defendant to do so. However, as counsel for Plaintiffs recognized during the hearing, Defendant may choose to move for summary judgment (including for partial summary judgment as to its statute of limitations defense) at any time under Federal Rule of Civil Procedure 56.

---

[4] As noted above, the standards to be applied to a Rule 15(a) motion to amend a complaint are the same as those used for a motion filed pursuant to Rule 12(b)(6). Similarly, the materials that a Court may consider in considering each motion are the same. See, *e.g. Powers v. Centennial Communications Corp.*, 679 F. Supp. 2d 918, 929 (N.D. Ind. 2009) (citing *Barry Aviation Inc.*, 377 F.3d at 687) ("[E]valuation of evidence beyond the complaint is inappropriate under a motion to dismiss, and perhaps even more so under * * * a motion to amend."). Whether the Court decided this motion under Rule 15, Rule 12, or both, consideration of the deposition transcripts would be improper.

Finally, the Court can quickly dispose of the second argument raised by Defendant in its briefs. As noted above, Plaintiffs' complaint is admittedly thin on the dates. Defendant argues that under *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), "Plaintiffs' [complaint] falls short of pleading basic, fundamental facts [* * * because] they must demonstrate that the limitations period applicable to their claim has not expired." (Def. Mem. [23] at 11); see also *id*. at 12 ("Plaintiffs' failure to plead dates necessary to indicate beyond a purely speculative level that their claims could be timely" justifies dismissal). Defendant's argument that Plaintiffs must affirmatively plead facts showing that their claim is timely is patently wrong. It is not surprising that Defendant cites no cases other than *Twombly* and *Iqbal* to support such a position. (*Id*. at 11-13). A complaint states a claim on which relief may be granted when it narrates an intelligible grievance that, if proved, shows a legal entitlement to relief. *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 625 (7th Cir. 2003). As discussed above, complaints "need not anticipate or attempt to defuse potential defenses," *id.*, instead "the resolution of the statute of limitations comes after the complaint stage." *Barry Aviation*, 377 F.3d at 688.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Title VII claim, which is found in the complaint filed in the 10-cv-05731 case, is denied [9 in the 10-cv-05731 case]. Defendant's motion for leave to file an additional reply brief or for oral argument "to correct misstatements of fact" [59] is also denied.

_____
Dated: January 31, 2011    Robert M. Dow, Jr.
United States District Judge

11