IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA BROWN CONLEY, TERRY GORDON, MARY REDMOND, and SABRINA PIPKINS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | Case No. 09-CV-5996 |
| NESTLÉ USA, INC. | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant's motion for summary judgment [78], Plaintiffs' cross-motion for partial summary judgment [see 98-1], and Plaintiffs' motion to file a reply brief instanter [105]. For the reasons set forth below, the Court grants Defendant's motion [78] and Plaintiffs' motion for leave to file their reply brief instanter [105], but denies Plaintiffs' cross-motion for partial summary judgment [see 98-1].[1]

---

[1] Defendants filed the first motion for summary judgment [78]. Plaintiffs later sought leave to file their own cross-motion for partial summary judgment [see 98]. The Court granted that motion [see 100], but Plaintiffs never actually filed the motion for summary judgment as a separate entry on the docket. They attached the motion as an exhibit to their motion for leave [see 98-1]. Nevertheless, the parties proceeded to brief their cross-motions for summary judgment. At the end of the briefing schedule, Plaintiffs filed a motion for leave to file their reply brief and supporting documents instanter [105], which Defendants opposed [see 110] on the ground that Plaintiffs habitually disregarded agreed and/or court-imposed deadlines. Defendants' point is well taken, as the record reflects numerous instances of untimely filings by Plaintiffs in this case. Nevertheless, in the interest of a complete consideration of the merits of the claims in this case and the absence of any significant prejudice to Defendants, the Court will grant the motion for leave to file the reply brief instanter [105] and has in fact considered the brief in rendering its ruling.

**I. Background**[2]

Defendant Nestlé USA, Inc. is a food manufacturing company with a plant in Franklin Park, Illinois. Plaintiffs Patricia Brown Conley, Terry Gordon, Mary Redmond, and Sabrina Pipkins are all employees of Nestlé at the Franklin Park plant. Plaintiffs are all African American and members of Local 1, Bakery, Confectionary, Tobacco Workers & Grain Millers International Union ("the Union"). Plaintiffs were former "machine operators," whose duties included operating and cleaning the machines. Plaintiff Sabrina Pipkins is now a Lead Mechanic Operator. Mary Redmond holds a general labor position, and Conley and Gordon are now on "voluntary layoff" and no longer work regular hours at Nestlé.

In 2004, Defendant announced to Plaintiffs that their positions would soon be replaced by newly created and more highly paid technical positions called "mechanic operators" ("MO"). Because Nestlé anticipated the MO to be a technical job, it would be one of the highest paid positions according the Union agreement. Defendant announced that employees who wished to apply for the new MO job but did not have any previous mechanical ability would be required to take a mechanical aptitude test administered by the National Occupational Competency Testing Institute ("NOCTI").[3] To be eligible for the new position, employees would have to achieve a score of at least 60. To give current line employees the opportunity to learn the skills required for the new job, Nestlé created an apprentice program for all those who scored below 60 but above 45 on the NOCTI test, to educate and train them for the new MO positions.

---

[2] The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements: Defendants' statement of facts ("Def. SOF")[80], the Plaintiffs' response to The City's statement of facts ("Pl. Resp.") [90], the Plaintiffs' Statement of Additional Facts ("Pl SOAF") [91], and Defendants' Response to the Plaintiffs' Statement of Additional Facts (Def. Resp.) [102].

[3] Nestlé had been using the NOCTI test for the past ten years to determine if an individual seeking a mechanical position was qualified. The Union had full knowledge of the test and Nestlé's requirements.

The apprentice program required candidates to complete classroom training through Triton College and on the job training during which apprentices would work with MOs for approximately two years. As part of the program, Nestlé agreed to pay the tuition for every apprentice provided that he or she passed all courses with at least a C. Failure to pass any class with a C would disqualify the employee from the apprentice program Pursuant to the terms of the Union Collective Bargaining Agreement, which prohibit any employee from bidding on a job for which he or she was disqualified for a period of two years. In the event of disqualification, the employee could utilize his or her seniority to bid on any other available position,

In November 2005, Nestlé distributed a memorandum outlining the details of the MO apprentice program. Following the announcement, 44 employees took the NOCTI test and scored higher than 45 but less than 60, qualifying for the apprentice program. All 44 of those employees were minorities and 35 were African-Americans. Ultimately, excluding individuals who voluntarily withdrew from the apprentice program, approximately 67% of all apprentices successfully completed the program, 74% of whom were African-American.

Plaintiffs all enrolled in the MO apprentice program after receiving more than 45 but less than 60 on the NOCTI test.[4] The classroom aspect of the program began in January 2006 and was taught by a Triton College instructor. "Math for Mechanics" was the first class and was a prerequisite for later courses. Conley, Redmond, and Gordon all failed to achieve a grad of C in the Math for Mechanics class. Conley and Gordon also failed to achieve Cs in the Machinery Components I class. Accordingly, in June 2006, all three were disqualified from the apprentice program.

Pipkins passed several classes in the curriculum before failing to earn a C in Hydraulics,

---

[4] Redmond scored a 60.6 on her test, but elected to go through the apprenticeship program.

disqualifying her from the program in September 2007. But Pipkins decided to continue classes on her own time and expense, and eventually completed the program. After completing the program and allowing the two-year waiting period in the labor contract to expire, Pipkins re-took the NOCTI test and qualified to move directly into an MO position in January 2010. She later was promoted to Lead MO.

Plaintiffs Conley, Gordon, and Redmond filed a grievance through the Union alleging that Nestlé unjustly disqualified them from the apprentice program in violation of the labor contract. Nestlé denied the grievance; the Union did not pursue arbitration. Conley, Gordon, and Redmond also never bid on any MO or apprentice position after the two year period required by the labor contract had expired, nor did they retake the NOCTI exam.

Plaintiffs filed this suit on September 25, 2009 alleging that Defendant discriminated against them on the basis of race in violation of 42 U.S.C. § 1981 [1]. On May 24, 2010, the Supreme Court decided *Lewis v. City of Chicago*, 130 S. Ct. 2191 (2010), which held that plaintiffs could bring claims premised on the later implementation of formerly-adopted policies under the "disparate impact" provision of Title VII, 42 U.S.C. § 2000e-2; such claims previously were barred in this circuit. On June 4, 2010, plaintiffs Conley, Redmond, and Gordon filed charges with the Equal Employment Opportunity Commission ("EEOC"), a statutory prerequisite to a disparate impact claim, and filed a motion in this Court to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) to add such a claim [20].

After the motion to amend was fully briefed but before the Court had ruled, plaintiffs Conley, Redmond and Gordon filed a second lawsuit (1:10-cv-05731) against Nestlé, asserting a single Title VII claim which was nearly identical to the disparate impact claim that they proposed to add in this case. On October 4, 2010 the second case was reassigned to this Court

pursuant to Local Rule 40.4, because the facts underlying both cases are identical. (See doc. no. 7 in 10-cv-05731). On October 13, 2010, the Court struck the motion to amend the complaint in this case without prejudice; the parties and the Court agreed that the two cases would be consolidated and the briefing on Plaintiffs' motion to amend would be treated as the briefing on the motion to dismiss that Defendant would file targeting the complaint in the 10-cv-05731 case. (See [51]).

On October 27, Defendant filed its motion to dismiss in the 10-cv-05731 case (see doc. no. 9 in 10-cv-05731), which contained an extensive discussion of new authority. On January 31, 2011, the Court denied Defendant's motion to dismiss [66]. The parties then proceeded to briefing on summary judgment.

## II. Standard of Review

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III. Analysis**

    **A. Race Discrimination Claim**

Plaintiffs claim that Defendant discriminated against them on the basis of their race in violation of Title VII of the Civil Rights Act. Title VII prohibits discrimination in employment: "It shall be an unlawful employment practice for an employer * * * to discharge any individual because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove a case of discrimination under Title VII, a plaintiff may show discrimination under either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008) (explaining the misleading nature of this nomenclature and reiterating that the direct method may be proven with either direct or circumstantial evidence and that the indirect method proceeds under the burden-shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)); see also *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Under the direct method of proof, the plaintiff may introduce either direct or circumstantial evidence to create a triable issue as to whether the adverse employment action was motivated by a discriminatory intent. *Id.*; see also *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005); *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). In

other words, the plaintiff must show either "an acknowledgement of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 272 (7th Cir. 2004) (citing *Gorence v. Eagle Foods Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir. 2001)). Plaintiffs have not presented any direct evidence of discrimination, and therefore must proceed under the indirect method.

Under the indirect method of proof initially set forth in *McDonnell Douglas Corp. v. Green*, a plaintiff first must establish a *prima facie* case of discrimination. 411 U.S. 792, 802-04 (1973). In order to establish a *prima facie* case of race, sex, and/or age discrimination, a plaintiff must establish that: (1) she was a member of a protected class; (2) she was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. See *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007).

If the plaintiff successfully establishes a *prima facie* case, a rebuttable inference of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997); see also *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). Once the defendant provides a legitimate explanation, the burden then shifts back to the plaintiff to prove that the proffered justification is pretext. *Fane*, 480 F.3d at 538.

In this case, only prongs two and four are at issue.[5] Defendant argues that Plaintiffs have failed to establish a *prima facie* case because they were not qualified for the MO job and they were not treated less favorably than other employees who are not members of the protected class. The Court agrees.

First, Plaintiffs have failed to show that they were meeting Nestlé's legitimate expectations when they were disqualified from the apprentice program. The notice that Nestlé posted in November 2005 regarding the MO apprentice program clearly stated that in order to complete the program, an individual must pass all required courses in the curriculum with a grade of C or better. The notice explained that failure to meet these requirements would result in disqualification from the apprentice program. It is undisputed that Plaintiffs failed to achieve a grade of C or better in at least one of the required courses taught at Triton College. And while Plaintiffs spend much time arguing that the introductory math class was not necessary for the MO job, it is not for the Court to judge the necessity of the class as long as it was a good faith requirement for the new position. See *Omwaunmelu v. Nat'l R.R. Passenger Corp.*, 318 F. Supp.2d 669, 671 (N.D. Ill. 2004) ("So long as the employer's expectations of its employee are bona fide – that is, in good faith and without fraud or deceit – the court will not examine whether the employer is asking 'too much.'") (quoting *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000)). Plaintiffs offer no evidence—and the Court finds none—that Defendant's course requirements were not made in good faith. On the contrary, all of the evidence suggests that Nestlé's efforts to train employees to qualify for higher skilled, higher paying jobs, were reasonable and "adequately communicated to the employee." *Tench v. Abbott Labs.*, 2006 WL

---

[5] The parties agree that the Plaintiffs are members of a protected class and that they suffered an adverse employment action.

794765, at *4 (N.D. Ill. Mar 23, 2006). Accordingly, Plaintiffs cannot prove that they met Defendants legitimate expectations when they failed to meet the universal requirements that they receive at least Cs in the required classes to be enrolled in the apprenticeship program and eligible for the new MO jobs.

Plaintiffs also have failed to show that any similarly situated person who is not a member of the protected class received more favorable treatment. "A similarly situated employee is one who is directly comparable to [the plaintiff] in all material respects." *Teninty v. Geren*, 776 F. Supp. 2d 725, 737 (N.D. Ill. 2011). To evaluate whether two employees are directly comparable, a court considers all relevant factors, including whether the employees (1) held the same job description, (2) were subject to the same standards, (3) were subordinate to the same supervisor, and (4) had comparable experience, education, and other qualifications. *Rummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 688, 692 (7th Cir. 2005). Thus, the Court looks only at those employees who are similarly situated to the Plaintiffs—*i.e.*, production line employees who were eligible for and enrolled in the MO apprentice program—in evaluating Plaintiffs' claim.[6] First, 75% of the employees who completed the MO apprentice program were African American. Second, no one was allowed to continue in the program after receiving a grade of less than C in any required course. Third, no white employee who scored under a 60 on the NOCTI test received a MO job. In other words, Plaintiff failed to identify any white or non-African American individual who was similarly situated to Plaintiffs and who received more favorable treatment. Accordingly, Plaintiffs have failed to make out a *prima facie* case of discrimination under Title VII.

---

[6] Plaintiffs spend most of their brief focusing on employees who were not similarly situated; these individuals are not relevant to the Court's analysis and will not be addressed.

Furthermore, Defendants argue that even if Plaintiffs could state a *prima facie* case, they have failed to establish pretext. In order to establish pretext, Plaintiffs must show that Defendant's articulated reasons for its adverse employment actions: (1) had no basis in fact; (2) did not actually motivate the actions; or (3) were insufficient to motivate the actions. *Jackson v. Am. Airlines, Inc*., 2008 WL 4211121, at *7 (N.D. Ill. Sept. 10, 2008). Plaintiffs must "specifically refute facts which allegedly support the employer's proffered reasons; conclusory statements about an employer's prejudice are insufficient to establish pretext." *Id.* at *8 (internal quotations and citations omitted). Plaintiffs here offer no facts that refute the employer's proffered reason for launching and regulating the MO apprentice program. Rather, Plaintiffs argue only that Nestlé had a secret plan to discriminate against African Americans. Yet African Americans represented 75% of the workforce at the Plant and 74% of all successful apprentices. Accordingly, Plaintiffs also have failed to establish pretext.

B.   **Disparate Impact Claim**

Plaintiffs brought a claim under the disparate impact provision of 42 U.S.C. § 2000e-2. Defendant argues that the disparate impact claim is time barred. The Court previously dealt with this issue at length in its January 31, 2011 Opinion [66] and found that Defendants argument could not prevail at the motion to dismiss stage because the Plaintiffs' complaint "on its face does not demonstrate that the disparate impact claim is time-barred." After discussing the impact of the Supreme Court's opinion in *Lewis v. City of Chicago*, 130 S.Ct. 2191 (2010), this Court advised that in order to determine whether the claim was time barred it needed to know (1) when Plaintiffs were dismissed from the apprenticeship program and (2) whether Plaintiffs continued to seek employment as MOs after their dismissal. With the relevant dates now before the Court, the Court agrees with Defendants. Plaintiffs were disqualified from the apprentice

10

program in June 2006, and never again took any steps required under the labor contract to bid on the MO job or apprentice program after that date. Plaintiffs, therefore, have not suffered any adverse employment action since June 2006, which is well outside the 300-day period prior to the June 4, 2010 filing of their EEOC charges.

Plaintiffs' first argue that the Court should apply the doctrine of equitable tolling because the Supreme Court reversed the Seventh Circuit's decision in *Lewis*. But Plaintiffs cite—and the Court finds—no authority to support their view. To the contrary, the Seventh Circuit consistently has "rejected the argument that a change in law alone warrants equitable tolling." *Fayoade v. Spratte*, 284 Fed. Appx. 345, 347-48 (7th Cir. July 7, 2008) (citing *Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007), and *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135-36 (7th Cir. 1994)). In a similar vein, the Supreme Court has warned that equitable tolling should be used "sparingly" in discrimination cases. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002) (citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984) *(per curiam)* ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants")). As Defendants note, Plaintiffs were free at all times to preserve their disparate impact claims in the EEOC and the courts, even if it required them to argue for reversal of existing precedent. For all of these reasons, the Court declines Plaintiffs' invitation to extend equitable tolling to this case.

Finally, Plaintiffs argue that Nestlé's violation was a continuing violation because Plaintiffs could not immediately discern that there was a disparate impact. Under a "continuing violation" theory, the statute of limitations period does not begin to run immediately after the occurrence of the discriminatory conduct because the employee did not and could not be expected to know that discrimination had occurred. *Poindexter v. Northrop Corp.*, 728 F. Supp.

1362, 1365 (N.D. Ill. Jan., 17 1990).  In *Carlisi v. Metro. Water Recl. Dist. Of Greater Chi.*, 2010 WL 4628680 (N.D. Ill. Nov. 8, 2010), this Court – relying on Seventh Circuit precedent – rejected a plaintiff's request to apply the continuing violation theory to his claim of constructive termination because the claim related to a discrete act and not an accumulation of events creating a hostile environment.  *Id.* at *5 (citing *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001) ("The 300-day limit . . .begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured, not when she determines that the injury was unlawful.")).  Plaintiffs here knew that they had been injured when they were fired in June 2006 and failed to file a timely charge, even though they did present a labor grievance and a complaint letter to management.  Accordingly, Plaintiffs' disparate impact claim is time barred.

## IV. Conclusion

For the foregoing reasons, Defendant's motion [78] for summary judgment and Plaintiffs' motion for leave to file a reply brief instanter [105] are granted.  Plaintiffs' cross-motion for partial summary judgment [see 98-1] is denied.

Dated: March 26, 2012

Robert M. Dow, Jr.
United States District Judge